UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CYNTIA GREEN, *et al.,* | ) | CASE NO. 1:21-CV-01166 |
| | ) | |
| *On behalf of herself and all others* | ) | JUDGE PAMELA A. BARKER |
| *similarly situated,* | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| *v.* | ) | |
| | ) | |
| MERCY HOME HEALTHCARE | ) | |
| SERVICES, LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## JOINT MOTION FOR APPROVAL OF SETTLEMENT

The Parties respectfully and jointly move the Court to approve the proposed Settlement reached by the Parties and memorialized in the *Agreement of Settlement and Release* ("Settlement Agreement") attached as Exhibit 1. The Settlement seeks to resolve all wage-and-hour claims of the Named Plaintiff and other participating employees that were or could have been brought in this Action.

If approved by the Court, the Settlement will provide settlement payments to the Named Plaintiff and other participating employees representing a substantial percentage of the potential value of their claims. The Parties respectfully submit that the proposed Settlement is fair, reasonable, and adequate, and satisfies the criteria for approval under § 216(b) of the FLSA.

The following settlement documents are respectfully submitted for approval or entry by the Court:

Exhibit 1:    *Agreement of Settlement and Release* ("Settlement Agreement");

Exhibit 2:    Proposed Final Order and Judgment Approving Settlement
             and Dismissing Action;

Exhibit 3:     Exhibit A to Settlement Agreement –
Individual Payments Allocation Schedule; and

Exhibit 4:     Declaration of Plaintiffs' Counsel.

The attached Memorandum in Support explains the nature of the Action, the negotiations, the principal terms of the Settlement, and the propriety of approving the Settlement and its proposed distributions of settlement proceeds.

Respectfully Submitted,

| | |
|---|---|
| *s/ Kevin M. McDermott II* | *s/ Evan T. Byron*    *(via email consent)* |
| Joseph F. Scott (0029780) | Evan T. Byron, Esq. (0081100) |
| Ryan A. Winters (0086917) | KAUFMAN, DROZDOWSKI |
| Kevin M. McDermott II (0090455) | & GRENDELL, LLC |
| SCOTT & WINTERS LAW FIRM, LLC | 29525 Chagrin Blvd, Suite 250 |
| The Caxton Building | Pepper Pike, Ohio 4412 |
| 812 E. Huron Rd., Suite 490 | 440.462.6500 – telephone |
| Cleveland, OH 44115 | 440.462.6504 – facsimile |
| (216) 912-2221   F: (216) 350-6313 | etb@kdglegal.com |
| jscott@ohiowagelawyers.com | |
| rwinters@ohiowagelawyers.com | *Attorney for Defendants* |
| kmcdermott@ohiowagelawyers.com | |
| | |
| *Counsel for Plaintiff* | |

ii

## <u>TABLE OF CONTENTS</u>

Table of Authorities ................................................................................................ iv

Memorandum In Support ........................................................................................ 1

I.     The Litigation ................................................................................................ 1

       A.     Facts and Procedural History .............................................................. 1

       B.     Discovery and Document Analysis ...................................................... 2

II.    The Negotiations ......................................................................................... 3

III.   The Terms of the Settlement and Release of Claims .................................. 3

       A.     The Scope of Settlement ..................................................................... 3

       B.     The Settlement Payments and Distributions ....................................... 4

IV.   The Propriety of Approval .......................................................................... 5

       A.     The Seven-Factor Standard is Satisfied .............................................. 6

       B.     The Settlement Payments Are Fair, Reasonable, and Adequate .......... 10

       C.     The Service Award to the Named Plaintiff is Proper and Reasonable ..... 10

       D.     Plaintiffs' Counsel's Fees and Expenses Are Proper and Reasonable ..... 12

V.     Conclusion .................................................................................................. 15

Certificate of Service ............................................................................................. 16

Certificate of Compliance with Page Limitation Requirements ............................ 16

## **<u>TABLE OF AUTHORITIES</u>**

**Cases**

*Alward v. Marriott Internatl., Inc.*, N.D.Ohio No. 1:18-cv-02337-PAG, 2019 U.S. Dist. LEXIS 199053 (Nov. 18, 2019).........................................................................11

*Blum v. Stenson*, 465 U.S. 886 (1984) ...........................................................................12

*Bowling v. Pfizer, Inc.*, 102 F.3d 777 (6th Cir. 1996).....................................................13

*Brandenburg v. Cousin Vinny's Pizza, LLC*, S.D.Ohio No. 3:16-cv-516, 2019 U.S. Dist. LEXIS 204371 (Nov. 25, 2019).....................................................................8, 9

*Castillo v. Morales, Inc.,* No. 2:12-CV-650, 2015 WL 13021899 (S.D. Ohio Dec. 22, 2015) .....................................................................................................................13

*Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015)...........................9

*Cooper v. Winking Lizard, Inc.,* N.D.Ohio No. 1:16CV1513, 2017 U.S. Dist. LEXIS 169237 (Oct. 4, 2017) .............................................................................................7

*Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136 (E.D. Pa. 2000) ...................................11

*D. A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S.Ct. 925, 90 L.Ed. 1114 (1946)............9

*Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227 (M.D. Fla. 2010) .....................................7

*Dillworth v. Case Farms Processing, Inc.*, N.D.Ohio No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446 (Mar. 8, 2010) ...........................................................................11, 13

*Fegley v. Higgins,* 19 F.3d 1126 (6th Cir. 1994) ...........................................................12

*Fincham v. Nestle Prepared Foods Co.*, 1:08-CV-73 (N.D. Ohio 2008) .......................13

*Funk v. Airstream, Inc.*, S.D.Ohio No. 3:17-cv-260, 2019 U.S. Dist. LEXIS 162334 (Sep. 23, 2019) .......................................................................................................12

*Gentrup v. Renovo Servs., LLC*, S.D.Ohio No. 1:07CV430, 2011 U.S. Dist. LEXIS 67887, 2011 WL 2532922 (June 24, 2011) .............................................................7

*Granada Invest., Inc. v. DWG Corp.,* 962 F.2d 1203 (6th Cir.1992) ...............................7

*Hainey v. Parrott*, 617 F. Supp. 2d 668 (S.D. Ohio 2007) .............................................9

*Hill v. Medicare Transport, Inc.*, N.D.Ohio No. 5:19CV1582, 2019 U.S. Dist. LEXIS 182622 (Oct. 22, 2019) ......................................................................................6, 12

iv

*In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369 (S.D. Ohio 2006) ........................ 9

*In re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366 (S.D. Ohio 1990) ................................................................................................................ 10, 11

*In re Southern Ohio Correctional Facility*, 175 F.R.D. 270 (S.D. Ohio 1997) ........................... 11

*Jackson v. Papa John's*, Case No. 1:08-CV-2791, 2009 U.S. Dist. LEXIS 140578 (N.D. Ohio 2009) ........................................................................................................ 13

*Jackson v. Trubridge, Inc*., N.D.Ohio No. 5:16-cv-00223, 2017 U.S. Dist. LEXIS 193782 (N.D.Ohio Jan. 26, 2017) ...................................................................................... 6

*Landsberg v. Acton Ents.,* S.D.Ohio No. C2-05-500, 2008 U.S. Dist. LEXIS 51544 (June 16, 2008) ........................................................................................................ 6

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982) .................................. 6

*McGhee v. Allied Waste Indus*., Case No. 1:07-CV-1110 (N.D. Ohio 2007) .............................. 13

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) ........................................................................ 10

*Osman v. Grube, Inc*., N.D.Ohio No. 3:16-cv-00802-JJH, 2018 U.S. Dist. LEXIS 78222 (N.D.Ohio May 4, 2018) ................................................................................ 6, 11, 13

*Posner v. Showroom, Inc*., 762 F.2d 1010, 1985 U.S. App. LEXIS 14544 (6th Cir.1985).......... 12

*Rawlings v. Prudential–Bache Prop., Inc.*, 9 F.3d 513 (6th Cir. 1993)....................................... 13

*Redington v. Goodyear Tire & Rubber Co.*, 2008 U.S. Dist. LEXIS 64639, 2008 WL 398146 (N.D. Ohio August 22, 2008) ................................................................... 7

*Reed v. Rhodes*, 179 F.3d 453 (6th Cir. 2008) ........................................................................... 12

*Rotuna v. W. Customer Mgmt. Grp., LLC*, No. 4:09-CV-1608, 2010 U.S. Dist. LEXIS 58912, 2010 WL 2490989 (N.D. Ohio June 15, 2010)..................................... 13

*Salinas v. United States Xpress Ents., Inc*., E.D.Tenn. No. 1:13-cv-00245-TRM-SKL, 2018 U.S. Dist. LEXIS 50800 (Mar. 8, 2018) ................................................... 11

*Sharier v. Top of the Viaduct, LLC,* N.D. Ohio No. 5:16-cv-343, 2017 U.S. Dist. LEXIS 35584 (Mar. 13, 2017) ............................................................................. 7, 8

*Snook v. Valley OB-GYN Clinic, P.C.,* E.D.Mich. No. 14-cv-12302, 2014 U.S. Dist. LEXIS 177517 (Dec. 29, 2014) ......................................................................... 6

*Steele v. Staffmark Investments, LLC*, 172 F. Supp. 3d 1024 (W.D. Tenn. 2016) ........................ 9

*Swigart v. Fifth Third Bank*, S.D.Ohio No. 1:11-cv-88, 2014 U.S. Dist. LEXIS 94450
(July 11, 2014) .................................................................................................. 14

*Thorn v. Bob Evans Farms, Inc*., No. 2:12-CV-00768, 2016 U.S. Dist. LEXIS 195207,
2016 WL 8140448 (S.D. Ohio Feb. 26, 2016)................................................. 14

*United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local
307 v. G & M Roofing and Sheet Metal Co.*, 732 F.2d 495 (6th Cir.1984) ...................... 12

**Statutes**

29 U.S.C. § 201 .......................................................................................................... 1

O.R.C. § 4111.01 ....................................................................................................... 1

O.R.C. § 4111.10 ....................................................................................................... 12

**Constitutional Provisions**

Ohio Const. Art. II, Sec. 34a.......................................................................................... 1

<u>**MEMORANDUM IN SUPPORT**</u>

I.    <u>**THE LITIGATION**</u>

    **A. Facts and Procedural History**

Named Plaintiff Cyntia Green filed Case No. 1:21-CV-01166 *on behalf of herself and all others similarly situated* on June 10, 2021 seeking relief under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and the Ohio Minimum Fair Wage Standards Act, Ohio Rev. Code Ann. §§ 4111.01, *et seq*. (ECF No. 1.) Plaintiff's Complaint alleged that Defendants Mercy Home Healthcare Services LLC and Magan Abraham violated the FLSA and Ohio law by failing to pay overtime compensation to Plaintiff Green and other similarly-situated employees at the rate of one and one-half times their regular rate for all hours worked in excess of forty hours per workweek. (*Id.* at PageID ##4-6, ¶¶ 13-27.) Defendants filed an Answer, denying all liability under any of Plaintiff's claims. (*See* ECF No. 13.) Plaintiff's Complaint (ECF No. 1) sets forth two separate counts as follows:

- Count I— a claim for violation of the FLSA's wage provisions, 29 U.S.C. §§ 201-219; and

- Count II— a claim for violation of Ohio's wage laws, Ohio Rev. Code §§ 4111.01, *et seq*.

Defendant Mercy Home Healthcare is a home health agency providing hourly home health aides as well as nursing care and physical therapy. Plaintiff Cyntia Green was employed by Defendants from February 2020 to June 2021 as a home health aide. Defendants utilize home health aide and employees with similar job titles, including Plaintiff Green, to provide these home health services. As alleged in the Complaint, Defendants Mercy Home Healthcare Services LLC and Magan Abraham violated the FLSA and Ohio law by failing to pay overtime

compensation to Plaintiff and other similarly-situated employees at the rate of one and one-half times their regular rate for all hours worked in excess of forty hours per workweek.

Obtaining the alleged unpaid wages at trial or through dispositive motion, as described above, would be no easy task. In particular, Plaintiff would need to: (1) convince the Court that the overtime claims should proceed to trial on a collective basis under 29 U.S.C. § 216(b); (2) prove that each covered employee performed unpaid overtime hours each workweek, in addition to the amounts of these times; and (3) defeat Defendants' legal and factual arguments that any violation was not willful and that Defendants are entitled to a good faith defense.

### B.  Discovery and Document Analysis

The Parties engaged in discovery, and Defendants produced voluminous wage-and-hour data and documents necessary to fully and fairly evaluate the claims of the Plaintiffs. Prior to engaging in settlement negotiations, Defendants provided Plaintiff company structure organizational documents,  employee handbook, orientation and other policy-related documents, and wage and hour data in the form of spreadsheets and PDF documents containing payroll and payment information for all covered employees. Plaintiffs' Counsel conducted a comprehensive investigation, including an extensive analysis of the wage-and-hour information and data and documents. Plaintiff's damages computation considered approximately 24,370 data points and permitted a calculation of the alleged unpaid wages for all covered home health workers. Based on Plaintiff's analysis, in a best-case scenario, Plaintiff and other home health aide employees were entitled to $78,037.18 in back overtime wages. The documents and data were extensively analyzed by both sides to assess the strengths and weaknesses of the case and determine computations of the claimed damages. The discovery and analyses were difficult and time-consuming, but proved instrumental to the negotiation of the proposed Settlement.

## II.   THE NEGOTIATIONS

Settlement negotiations were contentious. In advance of negotiations, Plaintiff prepared and submitted a comprehensive memoranda and demand addressing merits and damages issues. The Parties' subsequent negotiations resulted in a global settlement encompassing all issues, subject to approval by the Court pursuant to § 216(b). The distributions and settlement as a whole, including the attorneys' fees to Plaintiffs' Counsel, are supported by the Declaration of Plaintiffs' Counsel. (*See* Decl. of Counsel, Ex. 4.) Formal settlement documents, including the Settlement Agreement attached as Exhibit 1, were later prepared and executed for approval by the Court.

The result in this case was exemplary. As a result of this negotiated settlement, after the payment of attorneys' fees and costs, Plaintiff and other participating employees will receive 110% of their alleged unpaid overtime damages they could have received had they proven a willful violation under 29 U.S.C. § 216(b). (*See* Section IV below.) Without question this settlement represents a fair, just, and reasonable resolution of this case.

## III.   THE TERMS OF THE SETTLEMENT AND RELEASE OF CLAIMS

### A.   The Scope of Settlement

If approved by the Court, the proposed Settlement will resolve deeply disputed claims between the Parties. The Settlement will resolve wage-and-hour claims of the Named Plaintiff and all other participating employees who affirmatively agree to be bound by the Settlement. As highlighted below, Plaintiffs' Counsel and Defendants' Counsel believe that Settlement is appropriate because the Released Claims are being compromised without the need to establish the elements of those claims on which liability turns, in addition to providing a substantial recovery to Named Plaintiff and all other participating employees in light of the procedural and

3

substantive encumbrances underscored by Defendants. Named Plaintiff and Plaintiffs' Counsel believe the claims asserted in the matter have merit and that the evidence developed to-date supports the claims asserted. (*See* Exs. 1, 4.) Named Plaintiff and Plaintiffs' Counsel, however, also recognize the risk and expense of trying and, if necessary, appealing this action, and believe that the Settlement confers substantial benefits upon the Plaintiffs. (*Id.*)

### B.     The Settlement Payments and Distributions

**Total Settlement Amount.** Defendants have agreed to pay the maximum settlement amount of $136,800.00 as set forth in the Settlement Agreement. (Ex. 1 at 4, ¶ 3.) That sum will be used to make settlement payments to participating employees which shall constitute adequate consideration for the Settlement and will be made in full and final settlement of: (1) the claims released by the participating employees; (2) attorneys' fees and reimbursed litigation expenses; (3) service award; and (4) any other obligations of Defendants under the Settlement Agreement.

**Payments to Participating Employees.** From the total settlement amount, the maximum amount of $86,204.56 will be paid to the participating employees, including the Named Plaintiff. The proposed method of allocating the class payments is reasonable and fair to all. Payments to participating employees are based on each participating employees' calculated unpaid overtime hours during the applicable time period, June 7, 2019 to May 21, 2021.

If approved by the Court, the proposed Settlement will make individual settlement payments available to the Named Plaintiff and other (current and former) participating employees representing a substantial percentage of the potential value of their claims, and achieves an excellent result for the covered workers. To the extent they decide to participate, each of the 36 workers will receive approximately 110% of their calculated overtime back wages. Inherent in the proposed distribution method in which participating employees are

4

distributed settlement payments based proportionally on each Plaintiffs' calculated overtime damages during the relevant period, the settlement proposal treats participating employees equitably relative to each other. Named Plaintiff Green, as a participating employee, will participate in the recovery under the same procedure applicable to other covered workers.

**Service Award.** The proposed Settlement provides for an individual service award to Named Plaintiff Green in the amount of $5,000 in recognition of her assistance to Plaintiffs' Counsel and her direct contributions to achieving the Settlement on behalf of all participating employees. The proposed service award is well-earned. Among other things, Plaintiff Green consulted with Plaintiffs' Counsel at critical stages and provided important and necessary documents and information throughout the course of the litigation. Plaintiff Green's contributions were instrumental in enabling Plaintiffs' Counsel to negotiate the proposed Settlement.

**Attorneys' Fees and Cost Reimbursements.** From the Total Settlement Amount, Plaintiffs' Counsel will receive attorneys' fees and costs in the total amount of $45,595.44. After reductions for costs and litigation expenses in the total amount of $412.00, the attorney fee recovery will equal $45,183.44. (*See, e.g.,* Ex. 4, Decl. of R. Winters at ¶ 39.) The attorneys' fees, and the settlement as a whole, are supported by the Declaration of Plaintiffs' Counsel. (*Id.*) As provided in the Settlement Agreement, attorneys' fees and costs to Plaintiffs' Counsel will not be paid by Defendants until after the final approval order is issued by the Court, contemporaneously along with the settlement payments to Named Plaintiff and other participating employees as installment payments issued on a *pro rata* basis. (*See* Settlement Agreement at 4-6, ¶¶ 5-6.)

## IV. THE PROPRIETY OF APPROVAL

The proposed Settlement is subject to approval by the Court pursuant to § 216(b) of the FLSA. As shown below, Court approval here is strongly supported by established authority.

## A. The Seven-Factor Standard is Satisfied

This Settlement qualifies for Court approval under the FLSA, 29 U.S.C. § 216(b). The court presiding over an FLSA action may approve a proposed settlement of the action under § 216(b) "after scrutinizing the settlement for fairness." *Landsberg v. Acton Ents.,* S.D.Ohio No. C2-05-500, 2008 U.S. Dist. LEXIS 51544, at *2-3 (June 16, 2008), fn. 1 (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-55 (11th Cir. 1982) (the court should determine whether the settlement is "a fair and reasonable resolution of a bona fide dispute")); *Hill v. Medicare Transport, Inc.*, N.D.Ohio No. 5:19CV1582, 2019 U.S. Dist. LEXIS 182622, at *2 (Oct. 22, 2019); *Jackson v. Trubridge, Inc.*, N.D.Ohio No. 5:16-cv-00223, 2017 U.S. Dist. LEXIS 193782, at *4 (N.D.Ohio Jan. 26, 2017) (quoting *Kritzer v. Safelite Solutions, LLC,* S.D.Ohio No. 2:10-cv-0729, 2012 U.S. Dist. LEXIS 74994, at *19 (May 30, 2012)); *Osman v. Grube, Inc.*, N.D.Ohio No. 3:16-cv-00802-JJH, 2018 U.S. Dist. LEXIS 78222, at *2 (N.D.Ohio May 4, 2018).

In *Hill*, 2019 U.S. Dist. LEXIS 182622, at *2, a court within this district and division used seven factors to evaluate whether the proposed settlement was fair and reasonable for purposes of the FLSA, 29 U.S.C. § 216(b):

> (1) [T]he existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel.

(Citing *Snook v. Valley OB-GYN Clinic, P.C.,* E.D.Mich. No. 14-cv-12302, 2014 U.S. Dist. LEXIS 177517, at *3 (Dec. 29, 2014), citing *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241

(M.D. Fla. 2010)). *See also Sharier v. Top of the Viaduct, LLC,* N.D. Ohio No. 5:16-cv-343, 2017 U.S. Dist. LEXIS 35584, at *4 (Mar. 13, 2017) ("the risk of fraud or collusion, the complexity, expense, and likely duration of the litigation, the amount of discovery engaged in, the likelihood of success on the merits, and the public interest in settlement.") (citing *Crawford v. Lexington-Fayette Urban Cty. Govt*., E.D.Ky. No. 06-299-JBC, 2008 U.S. Dist. LEXIS 90070, 2008 WL 4724499, at *3 (Oct. 23, 2008) (further citation omitted)). "The court may choose to consider only factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case." *Cooper v. Winking Lizard, Inc.,* N.D.Ohio No. 1:16CV1513, 2017 U.S. Dist. LEXIS 169237, at *5 (Oct. 4, 2017) (quoting *Gentrup v. Renovo Servs., LLC*, S.D.Ohio No. 1:07CV430, 2011 U.S. Dist. LEXIS 67887, 2011 WL 2532922, at * 3 (June 24, 2011)); *Crawford*, 2008 U.S. Dist. LEXIS 90070, at *14 (quoting *Redington v. Goodyear Tire & Rubber Co.*, 2008 U.S. Dist. LEXIS 64639, 2008 WL 3981461, at *11 (N.D. Ohio August 22, 2008), citing *Granada Invest., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205-1206 (6th Cir.1992)).

A key factor – the likelihood of success on the merits balanced against the amount and form of the settlement – strongly supports approval. Litigating FLSA claims is always risky and uncertain, and Plaintiffs would have to establish not only Defendants' liability, which Defendants vehemently deny, but also each employee's overtime damages. Wage-and-hour cases for groups of employees are always expensive and time-consuming and the expense and likely duration of continued litigation favor approval. The Parties engaged in substantial document review, comprehensive payroll and wage and hour records analysis, and due diligence prior to arduous negotiations, and the issues were well understood – as noted above, the Parties conducted a comprehensive investigation, including an extensive analysis of the wage-and-hour

information and data and documents, including a computational methodology that considers approximately 24,370 data points and permits a calculation of the alleged unpaid wages for all covered employees. Plaintiffs' Counsel have extensive experience litigating FLSA claims, and there is no fraud or collusion. The settlement was reached as a result of arms-length negotiation between Parties represented by competent counsel.  *See Sharier*, 2017 U.S. Dist. LEXIS 35584, at *4-5. As noted above, to the extent they decide to participate in the settlement, each of the covered workers will receive approximately 110% of their calculated overtime back wages. (*See* Exs. 1, 4.) Prior to negotiations, Plaintiff's demand pertaining to the overtime back wages was $78,037.18; however, after the payment of attorney fees and all other litigation costs and expenses, the amount of $86,204.56 will be paid to the participating employees as distributed in the Individual Allocation Schedule attached as Exhibit A to the Settlement Agreement. (*See* Ex. 3.) Inherent in the proposed distribution method in which participating employees are distributed settlement payments based proportionally on each participating employee's calculated overtime damages during the relevant period, the settlement proposal treats participating employees equitably relative to each other. Named Plaintiff Green, as a participating employee, will participate in the recovery under the same procedure applicable to other participating employees.

In addition, of particular contention in this specific case is Defendants' ability to pay the full amount of a greater judgment, plus the costs of ongoing litigation. Financial information concerning the impact of a potential settlement on Defendants was provided to counsel during the negotiation of the settlement. The settlement reached here is a "good result in light of the concerns over collectability in this case." *Brandenburg v. Cousin Vinny's Pizza, LLC*, S.D.Ohio No. 3:16-cv-516, 2019 U.S. Dist. LEXIS 204371, at *12 (Nov. 25, 2019). Because the fairness of this compromise settlement is further predicated on Defendants inability to pay any greater

8

amount, not solely a bona fide dispute as to underlying liability, Defendants are willing to provide additional financial records showing Defendants' ability to pay a judgment for in camera review, as may be required by the Court for approval. *Steele v. Staffmark Investments, LLC*, 172 F. Supp. 3d 1024, 1026–27 (W.D. Tenn. 2016) ("legal issues (such as the extent of FLSA coverage), a settlement agreement reducing or waiving [FLSA] damages is invalid") (quoting *D. A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 116, 66 S.Ct. 925, 90 L.Ed. 1114 (1946)). *See also Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 203 (2d Cir. 2015) (providing "employees may not waive the right to recover liquidated damages due under the Fair Labor Standards Act (FLSA)"). Here, as noted in *Brandenburg*, 2019 U.S. Dist. LEXIS 204371, at *13, the settlement here "is a good result for the [Plaintiff] and appropriately accounts for the risk of going forward with the litigation." Ultimately, the outcome of litigating the case, and attempting a further recovery, would be uncertain, and the risks of continued litigation would be high. In contrast, the Settlement assures that the participating employees will receive significant compensation. Given the uncertainties surrounding trial, and potential collection efforts, in this matter, the certainty and finality of a settlement that will substantially benefit the Plaintiffs is in the public interest. *See Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *24 (the public interest is served when a settlement "ends potentially long and protracted litigation") (citing *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 369 (S.D. Ohio 2006); *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007)). The proposed Settlement will eliminate the risk and delay of litigation and potentially futile collection efforts, and make substantial payments available to the participating employees under an installment payment term that Defendants have represented they can satisfy.

### B.  The Settlement Payments Are Fair, Reasonable, and Adequate

As a part of the scrutiny applied to an FLSA collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." *Crawford*, 2008 U.S. Dist. LEXIS 90070, at *31 (citing *see Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999)).

In the present case, the Parties engaged in substantial document review, comprehensive data analysis, and due diligence prior to arduous negotiations, and the issues were well understood – as noted above, the Parties conducted a comprehensive investigation, including an extensive analysis of the wage-and-hour information and data and documents, including a computational methodology that considers approximately 24,370 data points and permits a calculation of the alleged unpaid wages for the affected employees based off the actual wage and hour data as produced by Defendants. To the extent they decide to participate in the matter, each of the 36 covered workers will receive approximately 110% of their calculated overtime back wages. This method of allocating the settlement proceeds in a wage-and-hour case is eminently equitable and fair, as it is based exclusively on the actual amounts of the participating employees' actual damages.

### C.  The Service Award to the Named Plaintiff is Proper and Reasonable

A reasonable service award properly recognizes the named/representative plaintiffs' services on behalf of other beneficiaries of the settlement and their contribution to achieving a positive outcome. *In re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366, 373-74 (S.D. Ohio 1990).

In this Circuit, service awards are "justified where the named plaintiffs expend time and effort beyond that of the other class members … by actively reviewing the case and advising counsel in prosecution of the case, or where the named plaintiffs faced the risk of retaliation or

threats as a result of their participation as class representatives." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273 (S.D. Ohio 1997). Service awards "are not uncommon, and 'courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'" *Dillworth v. Case Farms Processing, Inc.*, N.D.Ohio No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446, at *17 (Mar. 8, 2010) (approving $6,000 and $4,000 to representative Plaintiffs) (quoting *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000)); *Osman*, 2018 U.S. Dist. LEXIS 78222, at *5-6 (approving $7,500 service award to named plaintiff); *see Alward v. Marriott Internatl., Inc.*, N.D.Ohio No. 1:18-cv-02337-PAG, 2019 U.S. Dist. LEXIS 199053, at *4 (Nov. 18, 2019) (approving $7,500 service award); *Salinas v. United States Xpress Ents., Inc.*, E.D.Tenn. No. 1:13-cv-00245-TRM-SKL, 2018 U.S. Dist. LEXIS 50800, at *26 (Mar. 8, 2018) (approving $10,000 service award to named plaintiff).

Indeed, the Named Plaintiff Green incurred "substantial direct and indirect financial risks in attempting to vindicate the rights of others," and "spent a good deal of time and effort in this case." *In re Dun & Bradstreet*, 130 F.R.D. at 373-74. Among other things, Plaintiff Green consulted with Plaintiffs' Counsel at critical stages and provided and reviewed other important documents and information throughout the course of the litigation. Furthermore, Plaintiff Green faithfully represented the interests of the affected employees and ably assisted Plaintiffs' Counsel. Her contribution was instrumental in achieving this Settlement on behalf of all concerned. The proposed service award of $5,000.00 to Plaintiff Green is reasonable and well-earned.

### D.  Plaintiffs' Counsel's Fees and Expenses Are Proper and Reasonable

The FLSA provides that the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendants, and the costs of the action." 29 U.S.C. § 216(b). Ohio wage-and-hour statutes also provide for "costs and reasonable attorney's fees as may be allowed by the court." O.R.C. § 4111.10. The FLSA's mandatory fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley v. Higgins,* 19 F.3d 1126, 1134-35 (6th Cir. 1994), *cert. denied,* 513 U.S. 875 (1994) (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495, 502-03 (6th Cir.1984)). The Sixth Circuit has "upheld substantial awards of attorney's fees even though a plaintiff recovered only nominal damages" *Fegley,* 19 F.3d at 1134 (quoting *Posner v. Showroom, Inc*., 762 F.2d 1010, 1985 U.S. App. LEXIS 14544, at *6 (6th Cir.1985)). *Accord*, *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *27 *(May 30, 2012)* (the fee award must be "adequate to attract competent counsel but … not produce a windfall) (citing *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 2008); quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)); *Hill*, 2019 U.S. Dist. LEXIS 182622, at *3. "[I]n determining what constitutes a 'reasonable' fee award, '[c]ourts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees . . . encourage[s] the vindication of congressionally identified policies and rights." *Funk v. Airstream, Inc*., S.D.Ohio No. 3:17-cv-260, 2019 U.S. Dist. LEXIS 162334, at *5 (Sep. 23, 2019) (citing *Fegley*, 19 F.3d at 1134-35 (internal quotations and citations omitted)).

Here, Plaintiffs' Counsel seeks approval under the percentage-of-the-fund method, which has been approved by the Sixth Circuit. *See Rawlings v. Prudential–Bache Prop., Inc.*, 9 F.3d 513, 515–16 (6th Cir. 1993).  "Courts readily approve the percentage-of-the-fund method when a plaintiff obtains an exceptional result and avoids extended litigation time and costs." *Osman,* 2018 U.S. Dist. LEXIS 78222, at *6 (citing *Rotuna v. W. Customer Mgmt. Grp., LLC*, No. 4:09-CV-1608, 2010 U.S. Dist. LEXIS 58912, 2010 WL 2490989, at *7 (N.D. Ohio June 15, 2010) (approving one-third of the common fund as attorneys' fees).

As noted in *Osman*, one-third of the common fund "is a reasonable attorneys' fee award 'and has been approved in similar FLSA collective actions in this judicial district.'" *Osman*, 2018 U.S. Dist. LEXIS 78222, at *6-7 (citing *Rotuna*, 2010 WL 2490989, at *8; *Dillworth*, 2009 U.S. Dist. LEXIS 76947; *Jackson v. Papa John's*, Case No. 1:08-CV-2791, 2009 U.S. Dist. LEXIS 140578 (N.D. Ohio 2009); *Fincham v. Nestle Prepared Foods Co*., 1:08-CV-73 (N.D. Ohio 2008); *McGhee v. Allied Waste Indus*., Case No. 1:07-CV-1110 (N.D. Ohio 2007)). The percentage of the common fund method has the advantage of establishing reasonable expectations on the part of class counsel "as to their expected recovery," and encourages early settlement before substantial fees and expenses have accumulated. *Dillworth*, 2010 U.S. Dist. LEXIS 20446, at *19.

"The lodestar figure is used to confirm the reasonableness of the percentage-of-the-fund award." *Osman,* 2018 U.S. Dist. LEXIS 78222, at *6-7 (citing *Bowling v. Pfizer, Inc*., 102 F.3d 777, 780 (6th Cir. 1996)). A percentage-of-the-fund attorneys' fee award is reasonable when it amounts to a multiplier of approximately 2.5. *See, e.g., Castillo v. Morales, Inc.,* No. 2:12-CV-650, 2015 WL 13021899, 2015 U.S. Dist. LEXIS 192936, at *22 (S.D. Ohio Dec. 22, 2015) ("Class Counsel's cumulative lodestar of $263,479.00, compared to its requested fee of

13

$660,000.00, yields a lodestar multiplier of approximately 2.5. This is typical of lodestar

multipliers in similar cases."); *Swigart v. Fifth Third Bank*, S.D.Ohio No. 1:11-cv-88, 2014 U.S.

Dist. LEXIS 94450, at *18 (July 11, 2014) ("Counsel's cumulative lodestar of $512,885,

compared to its requested fee of $1,320,000, yields a lodestar multiplier of 2.57, which is

consistent with other risk multipliers...") (citations omitted); *Osman*, 2018 U.S. Dist. LEXIS

78222, at *7 (citing *Thorn v. Bob Evans Farms, Inc*., No. 2:12-CV-00768, 2016 U.S. Dist.

LEXIS 195207, 2016 WL 8140448, at *3 (S.D. Ohio Feb. 26, 2016) ("approving 32.92 percent

of the common fund when that number amounted to a 2.01 multiplier of plaintiff's counsel's

loadstar attorney's fees").

Currently (as of April 11, 2022), Plaintiffs' counsel collectively have approximately 89.3

hours in this case, a fee lodestar of $30,997.50. The breakdown is as follows: for Scott &

Winters Law Firm, LLC, Joseph F. Scott has approximately 10 hours at $450 per hour; Ryan A.

Winters has approximately 29 hours at $350 per hour; and Kevin M. McDermott II has

approximately 50.3 hours at $325 per hour (Ex. 4, Decl. of R. Winters at ¶ 44) – for a total of

$30,997.50.  Plaintiffs' counsel's multiplier is 1.46, less than that of other similar above-

referenced wage and hour cases which were approved by the district court.

Significantly, Plaintiffs' Counsel's lodestar has not been adjusted to account for the time

Plaintiffs' Counsel will expend fulfilling the obligations in the Settlement Agreement and

monitoring the administration of the Settlement. In addition to the time already expended,

Plaintiffs' counsel will have substantial time in settlement administration.  Again, the settlement

includes 36 potential settlement participants.  Plaintiffs' counsel has extensive experience in

these matters and, based upon prior settlements of similar size, counsel anticipates additional

time in settlement administration. The timeline for settlement administration and installment

payments established by the Parties' agreement will require the settlement administration to last a minimum of twelve months.  Given the number of payments to be issued over the installment period, there will inevitably be returned or uncashed checks.  Settlement participants routinely contact counsel for questions regarding the exact nature of the litigation, the effect of settlement, the precise calculation for their individual awards, and the anticipated timeline for receiving payment.  Based on all relevant factors, the proposed payment of attorneys' fees and cost reimbursements to Plaintiffs' Counsel is proper and reasonable, and fulfills the purpose and intent of the FLSA's fees provisions.

Based on all relevant factors, the proposed payment of attorneys' fees and cost reimbursements to Plaintiffs' Counsel is proper and reasonable, and fulfills the purpose and intent of the FLSA's fees provisions.

## V.  <u>CONCLUSION</u>

For the reasons addressed above, the Parties respectfully request that the Court approve the Settlement by entering the proposed order attached as Exhibit 2.

Respectfully Submitted,

| | |
|---|---|
| *s/ Kevin M. McDermott II* | *s/ Evan T. Byron      (via email consent)* |
| Joseph F. Scott (0029780) | Evan T. Byron, Esq. (0081100) |
| Ryan A. Winters (0086917) | KAUFMAN, DROZDOWSKI |
| Kevin M. McDermott II (0090455) | & GRENDELL, LLC |
| Scott & Winters Law Firm, LLC | 29525 Chagrin Blvd, Suite 250 |
| The Caxton Building | Pepper Pike, Ohio 4412 |
| 812 E. Huron Rd., Suite 490 | 440.462.6500 – telephone |
| Cleveland, OH 44115 | 440.462.6504 – facsimile |
| (216) 912-2221   F: (216) 350-6313 | etb@kdglegal.com |
| jscott@ohiowagelawyers.com | |
| rwinters@ohiowagelawyers.com | *Attorney for Defendants* |
| kmcdermott@ohiowagelawyers.com | |

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all Parties indicated on the electronic filing receipt.

*Kevin M. McDermott II*
Kevin M. McDermott II (0090455)

## CERTIFICATE OF COMPLIANCE WITH PAGE LIMITATION REQUIREMENTS

I, undersigned counsel, state that this matter has been assigned to the standard track, and I hereby certify that the memorandum contained herein complies with the page limitations established by Local Rule 7.1(f) as a dispositive motion "which, if granted, would result in the entry of judgment or dismissal, or would dispose of any claims or defenses, or would terminate the litigation." *See* N.D. Ohio Local Rule 16.1(b)(5).

*Kevin M. McDermott II*
Kevin M. McDermott II (0090455)